[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DISSOLUTION OF MARRIAGE
The following facts are found:
1. The plaintiff, Sharon Bender, and the defendant, Mark Bender, were married on November 19, 1976.
2. There are four children issue of the marriage. Two are presently minors, ages nine and sixteen.
3. No other children have been born to Mrs. Bender since the date of the marriage of the parties.
4. Mr. Bender has been employed as a firefighter by the City of Meriden for approximately nineteen years. He claims a net weekly income of $827.00. Mr. Bender is entitled to a pension as a firefighter only in the event he reaches twenty-five years of service. As such, his pension is currently unvested. His pension is vested, however, for purposes of disability. If he were to leave the fire department before twenty-five years, other than for a disability, he would receive only his contributions. These are currently valued at approximately $27,741.00.
5. Mrs. Bender worked part-time for most of the marriage. She trained as a secretary. She gave up her part-time work to become a temporary worker to regain her secretarial skills. She has recently been employed as a secretary for the Meriden Board of Education. She claims a net weekly income of $144.31.
6. Mr. Bender has additional income from lawn services and snow plowing. He also has a license to lobster and owns lobster pots. It is difficult to ascertain Mr. Bender's average income for the following reasons:
 a. When asked if he had claimed his extra income on his CT Page 11544 tax returns in past years, he invoked his fifth amendment privilege;
 b. He testified he earns $600 each time he plows. Because of the mild past winter, he plowed only once this year;
 c. His affidavit shows $65 per week in average extra income, yet he testified he made $3500-4000 annually from mowing lawns;
 d. Mr. Bender has often acquired motorcycles which he resells for a profit; and,
 e. He first denied income from the lobstering and then later testified he did not remember if he had ever sold lobsters.
7. There has been some violence in the family. Mr. Bender admitted hitting Mrs. Bender in self-defense. He admits putting his son's head through the wall, hitting his daughter and having his hands around her neck. Mr. Bender was arrested for an incident with his daughter at which time the court imposed a restraining order.
8. Mr. Bender's wife and family had little interest in his hobbies of motorcycling, boating and fishing. As the years progressed, Mr. Bender spent virtually all his free time engaged in these activities in the absence of his family. Mr. Bender testified the children have been on the boat "more than two times and less than one hundred times."
9. Mr. Bender has admitted "friendships" with other women during his marriage. He first testified that none of these relationships was of a sexual nature, and then admitted he had been engaged in one sexual relationship with "D" which continues to the present. Mrs. Bender learned her husband was at a motorcycle meet with another woman, "S." When she confronted Mr. Bender and asked him if he were engaged in a sexual relationship with "S", she testified that he replied that she would have to be stupid to believe he was not having sex with "S."
10. The parties have been separated for approximately two years. CT Page 11545
11. The marital home is not an asset of the marriage. Mrs. Bender's father owned this home when the parties married. They rented the home from him. The rent was originally $250 per month. Over the years, it slowly progressed to $450 per month. At all times, the rent represented approximately one-fourth of the fair rental value of the property. Mrs. Bender's father paid the taxes, water and insurance bills. Until very recently, neither party was aware that Mrs. Bender's father had been gifting the house to her in fifths. He was advised to do this by his attorney for estate planning purposes. Mrs. Bender now owns four-fifths of the house.
12. Despite a fairly good income, extra income and extremely small housing expenses, the parties have acquired virtually no assets and no savings. Mr. Bender's affidavit shows two automobiles worth $3000 total, a motorcycle worth $9000, a boat worth $10,000 and lawn-mowing equipment worth $1500. Mr. Bender notes no cash or savings. Mrs. Bender claims a car worth $4500, $3000 in household furnishings and no cash. Although she technically owns four-fifths of her home, she continues to rent from her father. As noted previously, her father had not told her of his estate planning gifts. The rent she pays is not unreasonable for one-fifth share, particularly in view of the fact that her father pays the taxes, water and insurance.
13. It appears to the court that virtually all discretionary income during the marriage was expended on Mr. Bender's personal pursuits.
14. Mr. Bender is in contempt of a temporary order, to which he agreed, requiring him to pay $1500 toward his daughter's college tuition. Mr. Bender testified he did not wish to agree to the entry of any future order regarding his children's education. The children have attended private school in the past.
15. The allegations of the complaint not expressly found above are found to have been proven, including the allegation that the marriage of the parties has broken down irretrievably and there is no prospect for reconciliation.
16. The principal cause for the breakdown of the marriage of the parties was the fact that all of Mr. Bender's free time was spent in pursuits that did not include his wife or children.
17. As of the close of evidence in this case, there was an CT Page 11546 arrearage due from Mr. Bender to Mrs. Bender pursuant to an order entered in this case for his payment of unallocated alimony and child support of $440.00 in addition to the $1500 noted in paragraph 14.
 ORDERS
The following orders are hereby entered:
 1. The marriage of the parties is dissolved, and each of them is declared to be single and unmarried.
 2. In accordance with the Child Support Guidelines, which call for child support of $255 per week based on the income declared by Mr. Bender in the financial affidavit which he filed with the court, Mr. Bender shall pay Mrs. Bender child support of $255 per week, by way of immediate wage execution.
 3. Mr. Bender shall continue to provide for the benefit of the minor children the health insurance coverages, or their equivalents, which he is now providing. The provisions of § 46b-84(d) of the General Statutes are made expressly applicable to the parties and the minor children. Each party shall pay one half of all uninsured medical and dental expenses, which phrase shall be liberally construed to include, but not be limited to, orthodontic, prescription eyewear, psychological and psychiatric expenses, incurred by or on behalf of each of the minor children.
 4. A. Mr. Bender shall pay to Mrs. Bender periodic alimony of $200 per week, which shall be taxable to Mrs. Bender, until the earlier to occur of the following:
i. The death of Mrs. Bender; and,
ii. The death of Mr. Bender.
 Upon the occurrence of either of the foregoing, Mr. Bender's obligation to pay alimony hereunder shall terminate automatically, without the necessity for any judicial order therefor.
 B. Mr. Bender's obligation to pay alimony pursuant to this CT Page 11547 Paragraph 4 shall not be subject to modification, except that:
 i. The amount of such alimony may be modified upward at any time, and
 ii. The amount of such alimony may be modified downward at such time, if any, when Mrs. Bender actually receives payments pursuant to the Qualified Domestic Relations Order entered in Paragraph 10 hereof, provided that alimony shall not be subject to modification under such circumstances to an amount less than one half of the amount of alimony to which she was entitled immediately before she began to receive such payments.
 It is expressly ordered that the remarriage, if any, or cohabitation, if any, of Mrs. Bender shall not be a ground for the termination of Mr. Bender's obligation to pay alimony.
 C. Payment of alimony provided for herein shall be paid by wage execution.
 5. Mr. Bender shall pay to Mrs. Bender the arrearage found in Finding 14, above, at the rate of $40 per week, and immediately after that arrearage has been paid, he shall pay to her the arrearage found in Finding 17, above, at the rate of $40 per week.
6. The boat and the motorcycle are awarded to Mr. Bender.
 7. The Oldsmobile Cutlass is awarded to Mrs. Bender, and immediately upon presentation to Mr. Bender of any documents necessary to confirm title in that vehicle in Mrs. Bender, Mr. Bender shall execute and deliver those documents to Mrs. Bender.
 8. Mr. Bender shall maintain, and promptly pay all premiums therefor, life insurance on his life in an unencumbered face amount of $100,000 payable to Mrs. Bender until such time, if any, when Mrs. Bender begins to receive payments pursuant to the Qualified Domestic Relations Order entered in Paragraph 10 hereof. Within 60 days after the entry of this decree, and within 60 days following each anniversary CT Page 11548 of this decree when Mr. Bender is obligated to maintain life insurance pursuant to this paragraph, Mr. Benders shall provide to Mrs. Bender evidence, from the issuer of such insurance, of the existence, beneficiary and amount of such insurance.
 9. Until such time, if any, when Mr. Bender's right to receive retirement benefits from the City of Meriden vests, Mrs. Bender shall be the beneficiary of, and be entitled to receive, the refundable contributions, with accrued interest or yield thereon, if any, made by or on behalf of Mr. Bender if such contributions, etc., shall ever become payable by the City of Meriden.
 10. There is hereby entered a Qualified Domestic Relations Order assigning to Mrs. Bender one half of the disability and/or retirement benefits earned by Mr. Bender from his employment by the City of Meriden for his labors for said City through the date of this decree. (The court is aware that Mr. Bender's right to receive retirement benefits has not yet vested.) Counsel for Mrs. Bender shall prepare a formal Qualified Domestic Relations Order implementing this order.
 11. Joint custody of the minor children are awarded to the parties; primary residence with the plaintiff, reasonable right of visitation to the defendant.
Dunnell, J.